FILE BY FAX

Paul R. Kiesel, Esq. (SBN 119854)
**KIESEL BOUCHER & LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

Paul O. Paradis, Esq. (*Pro Hac Vice Pending*)
Gina M. Tufaro, Esq. (*Pro Hac Vice Pending*)
**HORWITZ, HORWITZ &**
**PARADIS, Attorneys at Law**
405 Lexington Avenue, 61st Floor
New York, NY 10174
Telephone: (212) 986-4500
Facsimile:  (212) 986-4501

ORIGINAL
FILED

JUN 0 6 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### DIVISION

| | |
|---|---|
| WILLIAM EDWARDS and ANGELA ROLLINGS, on behalf of themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL ELECTRIC Co., a New York corporation, LANDIS+ GYR INC., a Delaware corporation and SILVER SPRING NETWORKS, Inc., a Delaware corporation, <br><br> Defendants. | Civil Action No. C 10-02431 SI <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> **(1)  VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT** <br><br> **(2)  VIOLATION OF THE BUSINESS AND PROFESSIONAL CODE § 17200, ET. SEQ.** <br><br> **(3)  UNJUST ENRICHMENT/ MONEY HAD AND RECEIVED** <br><br> **JURY TRIAL DEMANDED** |

1

1         Plaintiffs William Edwards and Angela Rollings (collectively, "Plaintiffs"),

2   by their undersigned counsel, allege the following upon personal knowledge as to

3   their own acts and upon information and belief as to all other matters. Plaintiffs'

4   information and belief is based upon the investigation conducted by counsel.

5   **NATURE OF THE ACTION**

6         1.  Plaintiffs bring this action on behalf of themselves and as a class action

7   against Defendants Landis+Gyr Inc. ("L+G"), General Electric Co. ("GE") and

8   Silver Spring Networks, Inc. ("SSN") (collectively, "Defendants") on behalf of all

9   residents of California who have a GE or L+G electric smart meter equipped with

10  SSN transmission technology (the "SmartMeters") installed at their residences and

11  who were damaged as a result thereof.

12        2.  Plaintiffs, by this Complaint, allege violations of California's Consumer

13  Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") and unjust

14  enrichment arising out of Defendants' defective SmartMeters.

15        3.  The SmartMeters are defective because the SmartMeters' firmware does

16  not transmit actual electricity usage data from Class members' homes to Class

17  members' utility companies for billing. Rather, the defect in the SmartMeters'

18  firmware causes the SmartMeters to transmit artificially inflated electrical

19  consumption data that is in excess of the amount of electricity that is actually used

20  by Plaintiffs and Class members.

21        4.  As a result of a defect in the SmartMeters, customers have received

22  electricity bills reflecting astronomically overstated increases in electricity usage

23  which are based on the incorrect electricity usage data generated and transmitted

24  by the SmartMeters. By way of example, Plaintiff Edwards received an electricity

25  bill that incorrectly reflected an astounding increase of more than **700%** in his

26  electricity usage over the same month in the prior year.

27  / / /

28  / / /

2

FIRST AMENDED CLASS ACTION COMPLAINT

1       5. Despite knowledge of the existence of the defect and the avalanche of
2  customer complaints that have surfaced concerning the SmartMeters, Defendants
3  have refused to publicly admit that the SmartMeters are defective. Defendants
4  have also failed to remedy the defect or to compensate Class members for the
5  millions of dollars that they have been wrongfully charged because of the defect in
6  the SmartMeters.

7                          **JURISDICTION AND VENUE**

8       6. This Court has jurisdiction over the claims asserted in this action
9  pursuant to 28 U.S.C. § 1332, as there is diversity among the parties and the matter
10 in controversy exceeds the sum or value of $5,000,000. Plaintiffs are citizens of
11 the State of California, whereas, Defendant GE is a citizen of New York and
12 Connecticut and Defendant L+G is a citizen of Delaware and Indiana.
13 Furthermore, Plaintiffs allege that the total number of members of the proposed
14 Class is greater than 100.

15      7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because
16 Defendants have contracted with certain utilities to provide SmartMeters, which
17 were installed in this judicial District. Further, Defendant SSN maintains its
18 headquarters in this District.

19      8. Defendants are subject to personal jurisdiction in this judicial District
20 and/or maintain contacts in this judicial District sufficient to subject Defendants to
21 personal jurisdiction. Defendant L+G entered into a 4-year, $250 million contract
22 with Pacific Gas & Electric ("PG&E") to furnish approximately 5,000,000
23 SmartMeters in the State of California sufficient to establish personal jurisdiction
24 for purposes of this action.

25                               **THE PARTIES**

26      9. Plaintiff William Edwards is a resident and citizen of the State of
27 California. An L+G-manufactured SmartMeter equipped with SSN technology
28 was installed at Mr. Edwards' home on October 15, 2009. Following the

---

3

FIRST AMENDED CLASS ACTION COMPLAINT

1 installation of the L+G SmartMeter at Mr. Edwards' home, the SmartMeter
2 installed at his home generated electricity usage data that incorrectly made it
3 appear as though Mr. Edwards' electricity usage increased by as much as 729% for
4 the month of April 2010 over the same month in 2009 despite the fact that Mr.
5 Edwards' made no material changes to his electricity consumption habits.

6     10.   Plaintiff Angela Rollings is a resident of Martinez, and citizen of the
7 State of California. A GE SmartMeter equipped with SSN technology was
8 installed at Ms. Rollings' home on August 20, 2009. Following the installation of
9 the GE SmartMeter at Ms. Rollings' home, the SmartMeter installed at her home
10 generated electricity usage data that incorrectly made it appear as though Ms.
11 Rollings' electricity usage skyrocketed for several months on a year-over-year
12 basis despite the fact that Ms. Rollings' made no material changes to her electricity
13 consumption habits during this period.

14     11.   Defendant General Electric Co. (GE) is a corporation organized and
15 existing under the laws of the State of New York and is a citizen of the State of
16 Connecticut, with its corporate headquarters located at 3135 Easton Turnpike,
17 Fairfield, CT 06828. GE, along with Defendant Landis+Gyr Inc., manufactures
18 the SmartMeters. GE entered into a contract with PG&E in October 2008 to
19 provide PG&E with SmartMeters for PG&E's SmartMeter program.

20     12.   Defendant Landis+Gyr Inc. (L+G) is a corporation organized and
21 existing under the laws of the State of Delaware and is a citizen of the State of
22 Indiana, with its principal place of business located at 2800 Duncan Rd., Lafayette,
23 IN 47904. L+G, along with Defendant GE, manufactures the SmartMeters L+G
24 entered into a contract with PG&E in October 2008 to provide PG&E with
25 SmartMeters for PG&E's SmartMeter program.

26     13.   Defendant Silver Spring Networks, Inc. (SSN) is a Delaware
27 Corporation having its principal place of business at 555 Broadway Street,
28 Redwood City, CA 94063. SSN manufactures the hardware and software

1   contained in the SmartMeters that generates and transmits Class members'
2   electricity usage data from the SmartMeters to Class members' utility companies.
3   On July 29, 2008, SSN announced that it had been selected by PG&E to provide
4   advanced networking technology for PG&E's SmartMeter program.

5                          **SUBSTANTIVE ALLEGATIONS**

6   **A Primer on Electrical Meter Technology**

7       14.   An electrical meter is a device that measures the amount of electricity
8   consumed by a customer. Electrical meters are typically calibrated in billing units,
9   the most common unit being the kilowatt hour ("KwH"), which is equal to the
10   amount of electricity used by a load of one kilowatt over a period of one hour.
11   "Traditional" electrical meters are installed by a utility company in close proximity
12   to where power lines enter a customer's residence and display the amount of
13   electricity used on indicators located on the meter's face. An employee of the
14   utility company is sent out to "read" the display on each customer's electrical
15   meter and report the customer's electrical usage back to the utility company on a
16   periodic basis.

17       15.   In contrast to traditional meters, a SmartMeter is an automated
18   electricity metering system. SmartMeters have the capability to monitor, record
19   and report electrical consumption data from a Class member's residence to the
20   Class member's utility company, without the need for a "meter reader."

21       16.   Each SmartMeter is equipped with a network radio which is supposed
22   to transmit the customer's actual electrical consumption data from the SmartMeter
23   to a network access point, or data center, and then to the utility company, via a
24   cellular network.   Defendants GE and L+G manufacture the SmartMeters,
25   Defendant SSN manufactures the hardware and software that is responsible for the
26   transmission of customer electricity consumption data from the SmartMeter to the
27   utility companies.

28   / / /

1 **The SmartMeters Are Defective**

2      17.    Deployment of the SmartMeters commenced in 2008. Almost
3 immediately after deployment, however, complaints arising from the defect in the
4 SmartMeters began to surface.

5      18.    Shortly after installation of the SmartMeters, Class members began
6 receiving electricity bills that reflected electrical consumption that was far in
7 excess of Class members' actual electrical usage. Because Class members'
8 electrical bills are based in part on the amount of electricity consumed each month,
9 Class members' electrical bills quickly sky-rocketed when Class members began
10 receiving electricity bills that had been calculated based on artificially inflated
11 electrical consumption data. In most cases, Class members saw their electricity
12 bills increase by as much as 200% to 300% over what they had paid for electricity
13 for the same months in the prior year period before the installation of the
14 SmartMeters.

15      19.    Although Defendants have repeatedly sought to attribute this
16 unprecedented increase in purported electricity consumption to factors other than
17 the SmartMeters, in all actuality, the dramatic increases in the amount of electricity
18 consumption reported by the SmartMeters in Class members' homes have been
19 caused by the defect in the SmartMeters.

20      20.    In particular, the SmartMeters are defective because the SmartMeters'
21 firmware prevents the SmartMeters from transmitting Class members' **actual**
22 electricity usage data from Class members' homes.

23      21.    Because of this defect, the SmartMeters report electrical consumption
24 in amounts that are artificially inflated and materially greater than the amounts of
25 electricity actually consumed by members of the Class, thereby resulting in grossly
26 inflated electricity bills being received by Plaintiffs and Class members. Class
27 members have been damaged because they have paid for electricity in excess of the
28 electricity that they have actually consumed because the SmartMeters transmitted

6

FIRST AMENDED CLASS ACTION COMPLAINT

1  artificially inflated electrical consumption data that is in excess of the amount of
2  electricity actually consumed by Class members.

3      22.    The defect in the SmartMeters caused one former employee of SSN to
4  state: "**I worked at SilverSpring networks as a firmware quality engineer and**
5  **can assure you that these so called smart meters are no where near ready for**
6  **prime time use... The whole thing is a gigantic scam**."

7

8  **Class Members Complain About Increases In Their**
9  **Electricity Bills As A Result Of The Defect In The SmartMeters**

10     23.    As a result of the defect in the SmartMeters, Class members began to
11  voice their outrage over electricity bills that, in some cases, more than tripled due
12  to the defect in the SmartMeters.

13     24.    The following is a sampling of customer complaints concerning the
14  defective SmartMeters:

| Date of Complaint | Complaint | Source |
|---|---|---|
| 8/12/09 | **Since the installation of this so called smartmeter, my electricity bill has more than doubled.** I have spoken to other home owners who complained about the same problem. I have not purchased any new appliances or changed anything in my home to create this high of a bill increase. In fact, we have changed our thermostat to 84 degrees in 104 degree weather. There is something terribly wrong with this smartmeter. It is a money trap | http://www.complaintsboard.com/complaints/smartmeter-c240671.html |
| 8/31/09 | Just another smart meter horror story to add to the list: **In the 1st** | http://people.bakersfield.com/home/Blog/noholdsbarred/23789 |

FIRST AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 1 | | **month after installation of PG&E's new Smart Meter, my bill soared to 10 times it's normal amount.** I disputed, but they are holding firm - and before the matter has even been resolved, I received the following month bill - **which takes my bill to 14 times it's normal amount**. I had to argue for 2 weeks before I could even get someone to schedule an appointment to look at my meter. Not that I trust PG&E to do the inspection, but what choice do I have at the moment. I am going to check in to the options listed in "No Holds Barred". Great information. Thanks! | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | 9/3/09 | What PG&E claims is that the old meters were running too slow, therefore all these years when the bill was 2 and 1/2 times less, we were getting over. Okay, well if that's the case, and PG&E was doing just fine financially then, aren't the rates now too high?<br><br>**My bill has gone up 3 times as much as pre smart meter.** Can you say monopoly overseen by an incompetent government watchdog? | http://people.bakersfield.com/home/Blog/rwestfall/49095 |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | 9/3/09 | I was also wondering if there will be a class action suit. **I know that for the past 10 years my usage has changed little or none.** So PG | http://people.bakersfield.com/home/Blog/rwestfall/49095 |
| 27 | | | |
| 28 | | | |

8

FIRST AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| | & E should really stop telling customers they are using more energy when in fact, it's us paying the 3 billion for their smartmeters. **My bill tripled**. I am unemployed and hungry I cannot afford 700 a month for electric. Where do we go? what do we do? Calling them is useless! | |
| 2/3/10 | **My bill went from $70 avg. to $229 this bill**. Also, there was no charge on there for gas...only electric! Ridiculous!! | http://www.kron.com/News/A rticleView/tabid/298/smid/112 6/ArticleID/4824/reftab/536/t/ PGE%20to%20Install%20Mor e%20Controversial%20Smart %20Meters%20in%20the%20 Bay%20Area/Default.aspx |
| 2/4/10 | I agree, **my bills were averaging $300.00 per month and for the last 2 months my bills are $600.00 for each month**, now my total amount due is $1,200.00+. | http://www.kron.com/News/A rticleView/tabid/298/smid/112 6/ArticleID/4824/reftab/536/t/ PGE%20to%20Install%20Mor e%20Controversial%20Smart %20Meters%20in%20the%20 Bay%20Area/Default.aspx |
| 3/30/10 | I sympathize with this family. We live in a single story, 1800sqft home. We do have one of those awful smart meters. **Our bill has gone up from approx. $150 per month to $350+.** We do not have a pool. We have energy efficient appliances. We do not turn on the heater, and we watch a regular 26in TV in our bedroom because the Plasma uses to much power. **We have cut back on everything electrical, but it makes no difference in the power bill, sometimes the bill goes even** | http://cbs13.com/consumer/Ca ll.Kurtis.Shocking.2.1598252. html#addComments |

FIRST AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5 | | **higher.** Our next door neighbor has a pool and a hot tub, with the same sq ft home. Their power bill is $100 cheaper per month than ours. **Something is wrong, how did everyones power bills suddenly jump up so high, with less usage?** | |
| 6<br>7<br>8 | 4/29/10 | **Our bills have been so high, I asked PG&E to remove the smart meter and install the old one,** but they refused. | http://www.danvilleweekly.com/square/index.php?i=3&t=1816 |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 4/30/10 | I also had a problem with PG&E and their smart meter. Did not dispute because the amount was not large but here is the story. I had a tenant turnover on a house I own in the 95842 zip code in Sacramento. **The house was vacant for the entire billing period. The only gas use in the dwelling is the stove and the heat; neither were even turned on once the entire period. The bill for the rental was 3 times the gas bill as for my personal residence** (which has twice the square footage). I disputed the bill and PG&E first asked about possible intruders that entered and squatted. No way was my answer because I had been showing it continuously. Their next "reason" was that I must have a leak because their smart meter "does not make mistakes". End of discussion. I just paid it and moved on telling the rep that there was no possible way that bill was correct. To this day never has a leak been detected! | http://cbs13.com/consumer/cal l.kurtis.investigates.2.1665693 .html#addComments |
| | | | |

FIRST AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 4/30/10 | **In short, my bill has increased from approximately \$100 per month to \$879 (current bill).** I started in January, 2010, disputing the rising cost of these bills. In March I received a letter from PGE stating that there was nothing wrong with the meter and the bill was correct. | http://cbs13.com/consumer/cal l.kurtis.investigates.2.1665693 .html#addComments | |
| 4/30/10 | PG&E is lying to their customers and haven't done one thing to fix the problem. If it continues like last year we could go broke! **We had 3 or 4 bills over the summer that were over \$600.00 and close to \$700.00 even though we shut off everything and set the air at 83 and I was dying in the heat!** We called and complained and at first they told us there was nothing that they would do! I kept complaining and then they said they would look at it. Their finding was there was nothing wrong and we used close to last years amounts?? That was real funny since we had turned everything off. They were just charging us the same as last years usage! I told them that they were crooks as I do not use a dishwasher, I do not use my microwave either. Gas oven and stove and so besides lights and a refrigerator and my washer what were they charging me for?? They explained it had to be my air conditioner. **My house is 8 years** | http://cbs13.com/consumer/cal l.kurtis.investigates.2.1665693 .html#addComments | |

11

FIRST AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 1 2 | | **old & it had never cost that much before the smart meter??** | |
| 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 | 5/10/10 | I have PG&E and I have solar...when I bought my house 5 years ago everything seemed fine...but every **August I get a accumulated bill for the year due to the solar...last August (AFTER the Smart meter was installed) my bill was $1900.00** compared to **$900.00** the previous year for the exact time frame. I called PG&E and of course they told me it wasn't them...that I should call the solar company...Solar company came out and it was running fine...**PG&E won't accept any responsibility and as usual blamed rate hike, higher usage etc.** At the time I received the 1900.00 bill I was out on disability...so paying a bill that size was not possible...I was able to set up a payment plan but was threatened a few times that they would cut off my power...WHAT CAN WE DO???? | http://cbs13.com/consumer/cal l.kurtis.investigates.2.1665693 .html#addComments |
| 22 23 24 25 26 | 5/11/10 | I was unplugging my TV and computer, plus I was only watching only 2 or 3 hours of TV per night**. For some reason my bill kept increasing. It doubled from just one month ago.** I guess this is the reason why. I hope they fix this problem soon. | http://cbs5.com/consumer/pge. smart.meters.2.1688655.html |
| 27 28 | 5/11/10 | **I worked at SilverSpring networks as a firmware quality engineer and can assure you that** | http://cbs5.com/consumer/pge. smart.meters.2.1688655.html |

FIRST AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 | | **these so called smart meters are no where near ready for prime time use. They are filled with bugs. The utility can change your rates on the fly but they have no plan in place to inform their customers of the changes. The whole thing is a gigantic scam.** | |
| 7 8 9 10 11 12 13 14 15 | 5/12/10 | Interesting to find out that my house is one of those 1% of the people complaining, because our bill was around $250 and $180 for a couple of months, when it usually would run around $80. Just because people don't complain doesn't mean that it's not happening to others. I want a refund. The guys come onto our property and change the meter, change ridiculous energy prices, and sweep it under the carpet! Pathetic! | http://cbs5.com/consumer/pge. smart.meters.2.1688655.html |
| 16 17 18 19 20 21 22 23 24 25 26 27 28 | 5/14/10 | I just wanted to pass along some information regarding our PG&E bill. **It has averaged $578.60 over the last 5 months.** We have a smart meter and have cut back every way imaginable. For over a month we have turned off the heater, turned off the garage freezer and also the beer cooler. Our PG&E bill went from $615.87 to $478.24. We have a well but have no other major usages of power. Our pool pump would be the next largest user. PG&E is literally driving people out of California. The power bill is our largest expense other than our Mortgage payment. There has to be a solution, otherwise everyday | http://cbs13.com/consumer/cal l.kurtis.investigates.2.1665693 .html#addComments |

FIRST AMENDED CLASS ACTION COMPLAINT

1
2

| | people will not be able to afford living in California. | |

3      25.    On October 5, 2009, in response to the avalanche of complaints
4  regarding the SmartMeters such as those set forth herein, California State Senator
5  Dean Florez (D-16th Dist.) held an "Informational Townhall Hearing" in
6  Bakersfield, CA.

7      26.    Despite the involvement of the California State Senate, Defendants
8  have refused to acknowledge the defect in the SmartMeters.

9

10  **Plaintiffs Edwards' and Rollings' Electricity Bills Increase**
11  **Dramatically As a Result of The Defect in The SmartMeters**

12      27.    A SmartMeter was installed at Plaintiff Edwards' home on October
13  15, 2009.    Plaintiff Edwards' SmartMeter was manufactured by L+G and is
14  equipped with SSN transmission technology.    Immediately following the
15  installation of the SmartMeter at Plaintiff Edwards' home, the amount of electrical
16  consumption reported by the SmartMeter installed at Plaintiff Edwards' home
17  increased dramatically over the amount of electrical usage reported by the
18  conventional electrical meter that had previously been operational at Plaintiff
19  Edwards' home.
20

21      28.    In particular, Defendants' SmartMeter reported Plaintiff Edwards'
22  electricity usage as 887KwH between April 1, 2010 and April 31, 2010 compared
23  to only 107KwH between April 10, 2009 and May 2, 2009, *an increase of 729%*.
24  The SmartMeter reported this dramatic increase in electricity consumption despite
25  the fact that Mr. Edwards did not change his electricity consumption habits during
26  this period of time.

27      29.    A SmartMeter was installed at Plaintiff Rollings' home on August 20,
28  2009.  Plaintiff Rollings' SmartMeter was manufactured by GE and is equipped

1   with SSN transmission technology. Immediately following the installation of the

2   SmartMeter at Plaintiff Rollings' home, the amount of electrical usage reported by

3   the SmartMeter installed at Plaintiff Rollings' home increased dramatically over

4   the amount of electrical usage reported by the conventional electrical meter that

5   had previously been operational at Plaintiff Rollings' home.

6       30.    In particular, Defendants' SmartMeter reported her electricity usage

7   as 659 KwH between August 29, 2009 and September 30, 2009 compared to only

8   414.08KwH between August 29, 2008 and September 30, 2008, a difference of

9

10  59%. The SmartMeter reported this dramatic increase in electricity consumption

11  despite the fact that Ms. Rollings did not change her electricity consumption habits

12  during this time period.

13      31.    The spike in purported electrical consumption reflected on Plaintiff

14  Rollings' September 2009 bill was just a precursor to what was to come in later

15  bills. For the period between November 26, 2009 and December 30, 2009,

16  Plaintiff Rollings' SmartMeter reported that Plaintiff had purportedly consumed

17  391 more KwH than she had during the same period in the prior year.

18      32.    Evidencing the defect in the SmartMeters, this purported increase in

19  consumption was reported by the SmartMeter in Ms. Rollings' home despite the

20  fact that Ms. Rollings *did not occupy her residence for 11 days during the 2009*

21  *billing period* and *the 2009 billing period was four days shorter than the 2008*

22  *billing period*.

23

24      33.    Despite the fact that the dramatic purported increases in electrical

25  consumption reported by the SmartMeters and reflected in Class members'

26  electrical bills very clearly indicates that the SmartMeters are defective,

27  Defendants have refused to acknowledge the defect in the SmartMeters and

28  similarly refused to reimburse Class members for their out-of-pocket damages.

---

FIRST AMENDED CLASS ACTION COMPLAINT

1

**CLASS ACTION ALLEGATIONS**

2    34.  Plaintiffs bring this class action on behalf of themselves and all
3 residents of California who have a GE or L+G SmartMeter equipped with SSN
4 transmission technology installed at their residences and who were damaged as a
5 result thereof.

6    35.  Members of the Class are so numerous that joinder of all members
7 would be impracticable.

8    36.  There are questions of law and fact common to all the members of the
9 Class that predominate over any questions affecting only individual members,
10 including:

11              a.  Whether the SmartMeters are defective;

12              b.  Whether Defendants violated the California CLRA and UCL;

13              c.  Whether Defendants were unjustly enriched as a result of the
14                  installation of the SmartMeters;

15              d.  Whether Defendants knew, or were reckless in not knowing, that the
16                  SmartMeters were defective; and

17              e.  Whether, as a result of Defendants' misconduct, Plaintiffs and the
18                  other Class members are entitled to damages, restitution, equitable
19                  relief, injunctive relief, or other relief, and the amount and nature of
20                  such relief.

21    37.  Plaintiffs' claims are typical of the claims of other members of the
22 Class.  Plaintiffs have no interests antagonistic to those of the Class, and
23 Defendants have no defenses unique to Plaintiffs.

24    38.  Plaintiffs will fairly and adequately protect the interests of the Class,
25 and have retained attorneys experienced in class and complex litigation.

26    39.  A class action is superior to all other available methods for this
27 controversy because: i) the prosecution of separate actions by the members of the
28 Class would create a risk of adjudications with respect to individual members of

1   the Class that would, as a practical matter, be dispositive of the interests of the
2   other members not parties to the adjudications, or substantially impair or impede
3   their ability to protect their interests; ii) the prosecution of separate actions by the
4   members of the Class would create a risk of inconsistent or varying adjudications
5   with respect to the individual members of the Class, which would establish
6   incompatible standards of conduct for Defendants; iii) Defendants acted or refused
7   to act on grounds generally applicable to the Class; and iv) questions of law and
8   fact common to members of the Class predominate over any questions affecting
9   only individual members, and a class action is superior to other available methods
10  for the fair and efficient adjudication of the controversy.

11      40.     Plaintiffs do not anticipate any difficulty in the management of this
12  litigation.

13

14                                    **COUNT I**

15  **(By Plaintiffs, Individually and on Behalf of Class Members, for the**
    **Violation of the California Consumer Legal Remedies Act For Injunctive**
16                                  **Relief)**

17

18      41.     Plaintiffs hereby incorporate all the above allegations by reference as
19  if fully set forth herein.

20      42.     The circumstances giving rise to Plaintiffs and Class members'
21  allegations, including the design, development, and installation of the defective
22  SmartMeters that report artificially inflated electricity consumption from the
23  SmartMeters installed in Class members' homes occurred in the State of
24  California.  Additionally, SSN maintains its corporate headquarters in Redwood
25  City, California and GE and L+G sell the SmartMeters in California.  Accordingly,
26  application of California law is appropriate.

27      43.     The CLRA was enacted to protect consumers against unfair and
28  deceptive business practices.  The CLRA applies to Defendants' acts and practices

1 described herein because it extends to transactions that are intended to result, or
2 which have resulted, in the sale or lease of goods or services to consumers.

3     44.    The SmartMeters are "goods" within the meaning of Cal. Civ. Code §
4 1761(a).

5     45.    Plaintiffs and each member of the Class are "consumers" within the
6 meaning of Cal. Civ. Code §1761(d).

7     46.    Defendants' deceptive acts and practices occurred in connection with
8 the provision of a service, as defined by the CLRA.

9     47.    At all times relevant hereto, Defendants manufactured the
10 SmartMeters, which are defective.

11     48.    The SmartMeters are defective because the SmartMeters' firmware
12 prevents the SmartMeters from reporting and transmitting actual electricity
13 consumption data from Class members' homes. Because of this defect, the
14 SmartMeters report electricity consumption that is materially greater than the
15 amounts of electricity actually consumed by members of the Class, and Class
16 members have been, and are continuing to be, damaged because they have been
17 caused to pay for electricity that they have not consumed because of the defect in
18 the SmartMeters.

19     49.    At all times relevant hereto, Defendants had exclusive knowledge of
20 an undisclosed material fact; i.e., that the SmartMeters are defective, which was
21 not known to Plaintiffs or members of the Class.

22     50.    Defendants engaged in unfair acts and practices by withholding this
23 material fact from Plaintiffs and members of the Class, who had the SmartMeters
24 installed at their residences.

25     51.    Plaintiffs and members of the Class were not aware of the fact that the
26 SmartMeters were defective at the times the SmartMeters were installed or at the
27 times that Plaintiffs and members of the Class paid for quantities of electricity that
28 were in excess of the quantities of electricity that Class members actually

FIRST AMENDED CLASS ACTION COMPLAINT

1  consumed.

2    52.    If Plaintiffs and Class members knew that the SmartMeters were
3  defective and had transmitted and reported electricity consumption that was in
4  excess of the quantities of electricity that the Class members had actually
5  consumed, they would not have paid for the electricity that they did not consume.

6    53.    As a proximate result of Defendants' unfair acts and practices, which
7  are continuing and ongoing, Plaintiffs and Class members suffered and continue to
8  suffer, damages and are entitled to an injunction.

9

10                                **COUNT II**

11  **(By Plaintiffs, Individually and on Behalf of All Class Members for Violation
    of California Business and Professional Code § 17200, *et. seq.* also known as
12                          the Unfair Competition Law)**

13

14    54.    Plaintiffs hereby incorporate all the above allegations by reference as
15  if fully set forth herein.

16    55.    The circumstances giving rise to Plaintiffs' and Class members'
17  allegations, including the design, development, and installation of the defective
18  SmartMeters that report artificially inflated electricity consumption data from the
19  SmartMeters installed in Class members' homes occurred in the State of
20  California. Additionally, SSN maintains its corporate headquarters in Redwood
21  City, California and GE and L+G sell the SmartMeters in California. Accordingly,
22  application of California law is appropriate.

23    56.    California Business and Professions Code, §17200, *et seq.*, also
24  known as the California Unfair Competition Law ("UCL"), prohibits acts of
25  "unfair competition," including any unlawful, unfair, fraudulent or deceptive
26  business act or practice.

27    57.    Under the unlawful prong of the UCL, violations of other laws are
28  treated as unfair competition that is independently actionable.

---

19

FIRST AMENDED CLASS ACTION COMPLAINT

1    58.    A business practice is "unfair" if it violates an established public
2  policy or if it is immoral, unethical, oppressive, or unscrupulous and causes injury
3  to consumers which outweighs its benefits.

4    59.    Defendants' practices alleged in this Complaint constitute unlawful
5  and unfair business acts and practices under California's UCL.

6    60.    Defendants committed "unlawful" business acts and practices by
7  engaging in conduct that violates California's Consumer Legal Remedies Act.

8    61.    Defendants committed "unfair" business acts and practices by:

9        (a)    engaging in conduct where the utility of such conduct, if any, is
10  outweighed by the gravity of the consequences to Plaintiffs and to other Class
11  members;

12        (b)    engaging in conduct that is immoral, unethical, oppressive,
13  unscrupulous, or substantially injurious to Plaintiffs and to other Class members;
14  and

15        (c)    engaging in conduct that undermines or violates the spirit or
16  intent of the consumer protection laws detailed herein.

17    62.    Specifically, at all times relevant hereto, Defendants' SmartMeters
18  were defective.

19    63.    The SmartMeters are defective because the SmartMeters' firmware
20  does not transmit actual electricity usage data from Class members' homes to Class
21  members' utility companies for billing. Rather, the defect in the SmartMeters'
22  firmware causes the SmartMeters to transmit artificially inflated electrical
23  consumption data that is in excess of the amount of electricity that is actually used
24  by Plaintiffs and Class members.

25

26    64.    At all times relevant hereto, Defendants had exclusive knowledge of
27  an undisclosed material fact; i.e., that the SmartMeters are defective, which was
28  not known to Plaintiffs or members of the Class.

20
FIRST AMENDED CLASS ACTION COMPLAINT

1    65.    Defendants engaged in unfair acts and practices by withholding this
2 material fact from Plaintiffs and the Class, who had the SmartMeters installed at
3 their residences.

4    66.    Plaintiffs and Class members seek declaratory and injunctive relief,
5 restitution and disgorgement of all profits obtained by Defendants from Plaintiffs
6 and Class members from the unfair competition alleged herein and other relief as
7 appropriate.

8

9                                    **COUNT III**

10   **(By Plaintiffs, Individually and on Behalf of All Class Members For
     Unjust Enrichment/Money Had And Received)**
11

12   67.    Plaintiffs hereby incorporate all the above allegations by reference as
13 if fully set forth herein.

14   68.    The circumstances giving rise to Plaintiffs' and Class members'
15 allegations, including the design, development, and installation of the defective
16 SmartMeters that report artificially inflated electricity consumption from the
17 SmartMeters installed in Class members' homes occurred in the State of
18 California. Additionally, SSN maintains its corporate headquarters in Redwood
19 City, California and GE and L+G sell the SmartMeters in California. Accordingly,
20 application of California law is appropriate.

21   69.    This Count is brought against Defendants pursuant to California's
22 common law doctrine of unjust enrichment/money had and received.

23   70.    At all times relevant hereto, Defendants manufactured the
24 SmartMeters, which are defective.

25   71.    The SmartMeters are defective because the SmartMeters' firmware
26 prevents the SmartMeters from reporting and transmitting actual electricity usage
27 data from Class members' homes. Because of this defect, the SmartMeters report
28 electricity consumption that is materially greater than the amounts of electricity

21

FIRST AMENDED CLASS ACTION COMPLAINT

1 | actually consumed by members of the Class, and Class members have been, and
2 | are continuing to be, damaged because they have been caused to pay for electricity
3 | that they have not consumed because of the defect in the SmartMeters.

4 |     72.   At all times relevant hereto, Defendants had exclusive knowledge of
5 | the undisclosed material fact; i.e. that the SmartMeters were defective, which was
6 | not known to Plaintiffs or members of the Class.

7 |     73.   Plaintiffs were not aware of the defective SmartMeters at the time the
8 | SmartMeters were installed or at the times that Plaintiffs and members of the Class
9 | paid for quantities of electricity that were in excess of the quantities of electricity
10 | that Class members actually consumed.

11 |     74.   Without knowledge of the defect, Plaintiffs and Class members
12 | conferred upon Defendants benefits which were non-gratuitous and constituted
13 | profits and money improperly had and received.

14 |     75.   Defendants accepted or retained the benefits conferred by Plaintiffs
15 | and Class members despite Defendants' knowledge of the defect in the
16 | SmartMeters.

17 |     76.   Retaining the benefits conferred upon Defendants by Plaintiffs and
18 | Class members under these circumstances make Defendants' retention of the
19 | benefits unjust and inequitable.

20 |     77.   Because Defendants' retention of the benefits conferred by Plaintiffs
21 | and Class members is unjust and inequitable, Defendants must pay restitution in a
22 | manner established by the Court.

23 | **PRAYER FOR RELIEF**

24 |     **WHEREFORE,** Plaintiffs pray that the Court enter judgment and orders in
25 | their favor and against Defendants as follows:

26 |     A.   An order certifying the Class and directing that this case proceed as a
27 | class action;

28 | / / /

---

22

FIRST AMENDED CLASS ACTION COMPLAINT

1      B.     An injunction preventing Defendants from having the SmartMeters

2          installed until Defendants remedy the defect alleged herein;

3      C.     Judgment in favor of Plaintiffs and members of the Class in an

4          amount of actual restitution to be determined at trial;

5      D.     An order granting reasonable attorneys' fees and costs, as well as

6          pre-and post judgment interest; and

7      E.     Such other and further relief as this Court may deem appropriate.

8

9                 **DEMAND FOR A TRIAL BY JURY**

10      Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

11

12  Dated: July 6, 2010

13                 **KIESEL BOUCHER & LARSON LLP**

14

15                 By:

16                    Paul R. Kiesel, Esq. (SBN 119854)

17                    8648 Wilshire Boulevard

18                    Beverly Hills, California 90211-2910

19                    Telephone: (310) 854-4444

                    Facsimile: (310) 854-0812

20

21                    Paul O. Paradis

                    Gina M. Tufaro

22                    **HORWITZ, HORWITZ &**

23                    **PARADIS, Attorneys at Law**

                    405 Lexington Avenue, 61st Floor

24                    New York, NY 10174

25                    Telephone: (212) 986-4500

                    Facsimile: (212) 986-4501

26

27

28

---

23

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brant C. Martin
**WICK PHILLIPS**
**GOULD & MARTIN LLP**
100 Throckmorton Street, Suite 550
Fort Worth, TX 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789

*Counsel for Plaintiffs*

24
FIRST AMENDED CLASS ACTION COMPLAINT